IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT MITCHELL ALEXANDER, | § | |
| TDCJ-CID #830440 185-68 | § | |
| v. | § | C.A. NO. C-10-325 |
| | § | |
| WARDEN KUKUA, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this prisoner civil rights action, plaintiff Robert Mitchell Alexander is suing defendant Lucinda Webb, a registered nurse, alleging that she was deliberately indifferent to his serious medical needs when she failed to determine that he was not receiving his prescribed medications while at the Garza West Transfer Facility.  Defendant Webb moves for summary judgment to deny plaintiff's claims on the grounds that she is entitled to qualified immunity.  (D.E. 55).  Plaintiff has filed a response in opposition.  (D.E. 66).  For the reasons stated herein, it is respectfully recommended that the Court grant summary judgment in favor of defendant Webb, and that plaintiff's claims against her be dismissed with prejudice.

**I.  JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently confined at the Stiles Unit in Beaumont, Texas, although his lawsuit involves events that arose when he was housed at the Garza West Transfer Facility in Beeville, Texas, from October 8, 2009 until October 14, 2009.

On October 13, 2010, plaintiff filed this action against defendant Webb, as well as other defendants, pursuant to 42 U.S.C. § 1983.  (D.E. 1).  Following an October 28, 2010 Spears[1] hearing, plaintiff's deliberate indifference claim against defendant Webb was retained, while his claims against the other defendants were dismissed.  (D.E. 11, 17).  On January 25, 2011, she filed her answer and raised the defense of qualified immunity.  (D.E. 24).  On May 25, 2011, she filed this motion for summary judgment.  (D.E. 55).  On June 27, 2011, plaintiff filed his response in opposition.  (D.E. 66).

## III.  SUMMARY JUDGMENT EVIDENCE

In support of the motion for summary judgment, (D.E. 55), defendant Webb offers the following:

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

2

Ex. A:      Plaintiff's TDCJ medical records while at the Garza West
            Transfer Facility, dated October 7, 2009 through October 13,
            2009;

Ex. B:      Affidavit of Lucinda Webb;

Ex. C:      University of Texas Medical Branch ("UTMB") medical
            compliance records for plaintiff, from October 9, 2009 through
            October 15, 2009; and

Ex. D.      Plaintiff's Step 1 and Step 2 grievances, with responses,
            concerning his prescribed medications while at Garza West
            Unit.

In  support of his response in opposition to Nurse Webb's summary

judgment motion, (D.E. 66), plaintiff offers his unsworn declaration, (D.E. 66, Ex.

A), as well as the unsworn declaration of his brother, Ronald Lee Alexander.  (D.E.

66, Ex. B).

The summary judgment evidence establishes the following:

In October 2009, Nurse Webb was employed by UTMB and assigned to the

medical department at the Garza West Transfer Facility.  (D.E. 55, Ex. B) (Webb

Aff. at ¶ 2).

While at the Stiles Unit, on September 7, 2009, plaintiff's TDCJ-CID health

status was updated.  (D.E. 55, Ex. A at 12).  His chronic health problems were

listed as chronic obstructive pulmonary disease and hyperlipidemia, as well as

allergies to certain lipid-lowering agents known as fibrate anti-lipidemics.  Id.

In September 2009, plaintiff along with his brother, Ronald Lee Alexander, was transferred on a bench warrant from the Stiles Unit in Beaumont to the Harris County Jail in Houston, Texas.  While at the Harris County Jail, he received his medications as determined by the Stiles Unit medical staff.

On September 8, 2009, a Medication Print Pass was generated for plaintiff to accompany him in transit to the Harris County Jail.  As of September 8, 2009, plaintiff was taking the following medications:

    (1)    Doxazosin Mesylate 2mg tab [hypertension];
    (2)    Pravastatin 20 mg tablet [lower cholesterol];
    (3)    Aspirin EC 81 mg tablet [prevent blood clots];
    (4)    Meloxicam 7.5 mg tablet [treat symptoms of osteoarthritis and rheumatoid arthritis];
    (5)    Loratadine 10 mg tablet [antihistamine];
    (6)    Omeprazole 20 mg capsule [acid reflux/heartburn];
    (7)    Nortriptyline HCL 75 mg capsule [depression];
    (8)    Simethicone 80 mg chew tab 100 [reduce intestinal gas];
    (9)    Docusate Sodium 100 mg capsule [stool softner];
    (10)    Doxycycline 100 mg tablet [antibiotic];
    (11)    Albuterol HFA 108 mcg INH 200 PF [bronchodilator]; and
    (12)    Ferrous Sulfate 325 mg tablet [iron].

Id. at 13-14.

On October 7, 2009, Rose Washington, the patient transport coordinator at the Harris County Jail, completed a health status update for plaintiff.  Id. at 2.  She identified plaintiff's "current/chronic health problems" as asthma.  Id.  No other

special needs were noted.  Id.  His transportation requirements were "routine," and he had no specialty clinic appointments pending.  Id.

On October 7, 2009, plaintiff was transferred from the Harris County Jail to the Garza West Unit, in transit back to the Stiles Unit in Beaumont, Texas.  Id. at 2. Several days later, on October 14, 2009, plaintiff was transferred off the Garza West Unit.  (D.E. 55, Ex. D at 1).

On October 8, 2009, Nurse Herschap at the Garza West Unit conducted plaintiff's medical intake screening.  (D.E. 55, Ex. A at 4-9).  Plaintiff's family medical history was positive for high blood pressure, and his personal medical history was positive for back injury; dental cavities; glasses; hearing aid; gum disease; rheumatism and arthritis; seasonal allergies; and tuberculosis.  Id. at 8. Nurse Herschap noted that plaintiff was wearing a knee brace and that he used a hearing aid.  Id.  He had recently been hospitalized for two days in September 2009 for bronchitis.  Id.  Plaintiff indicated that he needed dental treatment.  Id.  It was noted that plaintiff was taking numerous prescribed medications, as set forth on the medications list.  Id.

 On October 9, 2009, Dr. Larry Leinnger prescribed plaintiff two Keep-On-Person ("KOP") medications: (1) 81 milligrams of Aspirin Enteric daily; and

(2) 20 milligrams of Pravastatin daily, for thirty days.  Id. at 16.  That same day, he also met with mental health services for an intake mental health evaluation.  Id. at 10-11.  Psychotherapist Sheri Noble noted that plaintiff had no apparent mental health needs at the time.  Id. at 10.  Mental health care clinician Robin Gandy noted that plaintiff had past substance abuse with alcohol, and that he complained of back pain, but found that no mental health care intervention was needed at the time.  Id. at 11.

On October 12, 2009, Dr. Leinnger ordered two additional medications: (1) 150 milligrams of Ranitidine daily, for thirty days, KOP; and (2) 75 milligrams of Nortriptyline daily, for thirty days, to be dispensed by staff.  Id. at 18, 19.  Also on that date, plaintiff underwent a pre-segregation/psychiatric pre-crisis management health evaluation.[2]  Id. at 17.  Plaintiff was oriented to person, place and time, his thought processes were logical and organized, and he had no suicidal ideations.  Id. He was cleared for segregation.  Id.

On October 13, 2009, plaintiff filed an I-60 complaint stating that on October 9, 2009, P. Reece had seized his KOP medications and given them to Garza West Unit medical personnel.  Id. at 20.  He complained that replacement

---

[2] It is unclear who the examiner is, but it is not Nurse Webb.  (D.E. 55, Ex. A at 17).

medications had not been issued to him for treatment of his "chronic illnesses," and that he was in constant pain.  Id.

On October 13, 2009, plaintiff filed a Step 1 grievance complaining about the seizure of his KOP medications, stating that they were valued at $36.00 and it was against the law for them to be taken.  (D.E. 55, Ex. D at 1-2).  In a November 3, 2009 response, Practice Manager Rudy Martisek denied plaintiff's Step 1 grievance explaining that the medications transferred with him from the Harris County Jail were kept in the Garza West Unit medical department and that plaintiff was "prescribed medications by a Provider as clinically indicated." Id. at 2.

On November 19, 2009, plaintiff filed a Step 2 grievance alleging that he was never seen by "any medical person" regarding his medications while at the Garza West Unit.  Id. at 3-4.  He was seen on October 8, 2009 for hearing-aid batteries and possession of a TDCJ-CID approved knee brace, and he was seen by mental health on October 12, 2009 so that he could receive Nortriptyline to help with back pain, that had previously been prescribed at the Stiles Unit.  Id. at 3.  He concluded:

> I never received no medication the whole time I was at the Garza West facility.  Someone needs to check into Rudy A. Martisek's records to see when my KOP medications from the Stiles and Walls Unit was [sic] returned to me.  This medication was approved by the medical staff at the Stiles and Walls units to be in my

7

> possession.  Rudy A. Martisek, P.M., filed a false
> grievance response on 11-3-09.

Id.

On March 17, 2010, Program Administrator Guy Smith denied plaintiff's

Step 2 grievance.  Id.  He explained:

> A review has been completed regarding the
> allegation that your medications were stolen upon your
> arrival at the Garza Unit on 10/08/2009.  Available
> documentation and the Step 1 response indicate
> medications were ordered for you on 10/09/2009 and
> additional medication was ordered on 10/12/2009.  The
> Step 1 response also advised you that medications
> received from county jails are kept by the medical
> department and offenders are prescribed medications by a
> facility provider as clinically indicated.  The office
> supports the finding and response at Step 1.
>
> The investigation did not reveal any attempts by
> you to informally resolve your complaint.  An I-60
> should be submitted to the Complaint Coordinator or
> Health Administrator before filing a Step 1 grievance.
> Refer to HSA-34 "Getting Medical Treatment" for
> further information.  No action is warranted through the
> grievance mechanism.

Id.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  <u>Id.</u>  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); <u>see also</u> <u>Cormier v. Pennzoil Exploration & Prod. Co.</u>, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  <u>Caboni</u>, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  <u>Anderson</u>, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  <u>See</u> <u>Milchalik v. Hermann</u>, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted).  When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law.  <u>Id.</u> (citation omitted).  Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact

concerning the reasonableness of the official's conduct.  <u>Bazen v. Hidalgo County</u>,

246 F.3d 481, 490 (5th Cir. 2001).

## V.  DISCUSSION

Plaintiff is suing Nurse Webb in her individual capacity alleging that she

was deliberately indifferent to his serious medical needs because she failed to

ensure that he received his prescribed medications while at the Garza West Unit

from October 8, 2009 through October 14, 2009.  She moves for summary

judgment to dismiss plaintiff's claims arguing that there is no genuine issue of a

material fact and that she is entitled to qualified immunity.

The doctrine of qualified immunity affords protection against individual

liability for civil damages to officials "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a defendant invokes the

defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the

inapplicability of the defense.  <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323

(5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this

burden, a plaintiff must satisfy a two-prong test."  <u>Atteberry v. Nocana Gen. Hosp.</u>,

430 F.3d 245, 253 (5th Cir. 2005).  First, he must claim that the defendants

committed a constitutional violation under current law.  Id. (citations omitted).

Second, he must claim that defendants' actions were objectively unreasonable in

light of the law that was clearly established at the time of the actions complained

of.  Id. (citations omitted).  While it will often be appropriate to conduct the

qualified immunity analysis by first determining whether a constitutional violation

occurred and then determining whether the constitutional right was clearly

established, that ordering of the analytical steps is no longer mandatory.  Pearson,

555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

## A.    Step 1 –  Constitutional violation.

The Eighth Amendment imposes a duty on prison officials to "provide

humane conditions of confinement; prison officials must ensure that inmates

receive adequate food, clothing, shelter, and medical care, and must take

reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan,

511 U.S. 825, 832 (1994) (internal quotation omitted).  A prison official violates

this duty when by act or omission he is deliberately indifferent to prison conditions

which pose a substantial risk of serious harm.  Id. at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a

prisoner must allege the official(s) acted with deliberate indifference to serious

medical needs.  Wilson v. Seiter, 501 U.S. 294, 303.(1991); Estelle v. Gamble, 429

12

U.S. 97, 105 (1976); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991).

Deliberate indifference encompasses more than mere negligence on the part of

prison officials.  <u>Farmer</u>, 511 U.S. at 835.  It requires that the defendant be both

aware of specific facts from which the inference could be drawn that a serious

medical need exists and then the prison official, perceiving the risk, must

deliberately fail to act.  <u>Id.</u> at 837.

     Furthermore, negligent medical care does not constitute a valid § 1983

claim.  <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993); <u>see</u> <u>also</u> <u>Graves v.</u>

<u>Hampton</u>, 1 F.3d 315, 319 (5th Cir. 1993) ("It is well established that negligent or

erroneous medical treatment or judgment does not provide a basis for a § 1983

claim.").  As long as prison medical personnel exercise professional medical

judgment, their behavior will not violate a prisoner's constitutional rights.

<u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982).  Finally, active treatment of a

prisoner's serious medical condition does not constitute deliberate indifference,

even if treatment is negligently administered.  <u>See</u> <u>Stewart v. Murphy</u>, 174 F.3d

530, 534 (5th Cir. 1999); <u>Mendoza</u>, 989 F.2d at 195; <u>Varnado</u>, 920 F.2d at 321.

Deliberate indifference is an "extremely high" standard to meet.  <u>Gobert v.</u>

<u>Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation omitted).

In a brief in support of the original complaint, plaintiff alleged that his medications were wrongfully confiscated by an intake officer upon his arrival at the Garza Unit on October 8, 2009. (D.E. 2, at 7-8). He claimed that he was without his medications for the six days he was at the Garza West Unit, and that he was told that he could only get his medications returned to him by seeing the medical doctor. (D.E. 2, Ex. B at 31). In this pleading, he identified Nurse Webb as the "psych doctor, and alleged that she "is the person in charge of the medical psych department at the Garza West Transfer Facility of the Texas Department of Corrections who at all times is mentioned in this complaint." (D.E. 2, at 1, 5). He claims that Nurse Webb knew or should have known that he was without his daily medications because a mental health care worker spoke with him about his Nortriptyline and had him sign a medical release form on October 13, 2009. Id. at 8.

There is no genuine issue of a material fact that Nurse Webb is not a medical doctor. In her affidavit, Nurse Webb swears that she is employed as a Registered Nurse with UTMB and has been assigned to the Garza West Transfer Facility since 1996. (D.E. 55, Ex. B) (Webb Aff. at ¶ 2). She also testifies regardiing her lack of knowledge or involvement with plaintiff's medical care at the Garza West Unit:

> I have no personal knowledge of the allegations
> contained in Mr. Alexander's complaint. I am neither a

> medical doctor, as alleged by Mr. Alexander, nor have I
> ever met Mr. Alexander.  I have not had any contact with
> this offender at any time, and I have not entered any
> information into his medical record.

Id. at ¶ 4.

A state actor may be liable under § 1983 only if she "was personally involved in the acts causing the deprivation of [plaintiff's] constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981) (citation omitted).  "Personal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976)).  Additionally, supervisory officials cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability.  See Monell v. Department of Soc. Servs., 436 U.S. 658, 691-95 (1978); Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984) (en banc) (per curiam).  "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 534 (5th Cir. 1997).  For a supervisory official to be held liable, they must "affirmatively participate in the acts that cause constitutional deprivation" or "implement unconstitutional policies

15

that causally result in plaintiff's injury."  Mouille v. City of Live Oak, 977 F.2d

924, 929 (5th Cir. 1992).

Nurse Webb has offered uncontroverted evidence that she was not

personally involved in any act or decision concerning plaintiff's medical care or

medications while he was at the Garza West Unit.  (D.E. 55, Ex. B).  Nurse

Webb's name is not on any of plaintiff's medical records while he was at the Garza

Unit.  (D.E. 55, Ex. A).  Plaintiff's medical records demonstrate that, on October 8,

2009, his medical intake was performed by D. Herschap, L.V.N.  Id. at 4-9.  Nurse

Herschap noted that plaintiff arrived with a knee brace and that it was "ok by

security to keep."  Id. at 8.  Nurse Herschap also noted that plaintiff arrived with a

hearing aid and that he was given new batteries for it.  Id. Nurse Herschap noted

that plaintiff was taking prescribed medications and noted the "county sheet" that

arrived with plaintiff.  Id.

According to plaintiff's medical records, on October 9, 2009, Dr. Larry

Leinnger prescribed plaintiff two KOP medications: (1) 81 milligrams of Aspirin

Enteric daily; and (2) 20 milligrams of Pravastatin daily, for thirty days.  Id. at 16.

That same day, a mental health intake screening was conducted by Sheri Noble,

MA, LPC-S, with the title, "Responsible Psychotherapist," as well as by Robin

Gandy, a mental health clinician.  Id. at 10, 11.  The October 9, 2009 "consent for

16

mental health services-outpatient" form is signed by plaintiff and Robin Gandy.
Id. at 15.

On October 12, 2009, Dr. Leinnger ordered two additional medications: (1)
150 milligrams of Ranitidine daily, for thirty days, KOP; and (2) 75 milligrams of
Nortriptyline daily, for thirty days, to be dispensed by staff.  Id. at 18.  There is no
evidence to suggest that Nurse Webb was involved in the review of plaintiff's
medications or the decision of what prescribed medications he would receive while
at the Garza West Unit.

On October 13, 2009, plaintiff filed the I-60 complaining that his KOP
medications had been seized upon his arrival and that he was in constant pain.  Id.
at 20.  The I-60 indicates that it was received by staff on that same day, but not by
Nurse Webb.  Id.  Plaintiff was transferred the next day.  (D.E. 55, Ex. D at 1).

There is simply no evidence to indicate that Nurse Webb was personally
involved in any aspect of plaintiff's medical care.  Thus, as a matter of law,
plaintiff fails to establish that Nurse Webb was deliberately indifferent to his
serious medical needs because he cannot establish that she ever knew of a medical
need, let alone ignored that need.

In plaintiff's response to the summary judgment motion, he argues that
Nurse Webb has failed to "discharge her initial burden of production" because she

17

has failed to include in plaintiff's medical records: (1) an I-60 dated October 10, 2009, directed to "L. Webb  Medical/Psych"; or (2) the front [page] of an I-60 dated October 12, 2009 directed to "Medical/Psych L. Webb."  (D.E. 66, at 2). Plaintiff directs the Court to Exhibits K and L attached to his brief in support of his original complaint.  (D.E. 2).

Plaintiff's Exhibit K consists of two pages.  The first page is the form titled "Inmate Request to Official," and it is indeed directed to "L. Webb Medical/Psych" and dated October 10, 2009.  (D.E. 2, Ex. K).  The second page of plaintiff's Exhibit K is the I-60 offered by defendant.  (D.E. 55, Ex. A at 20).  In that I-60, plaintiff complains that P. Reece took his medications at screening, and the I-60 is date-stamped as received by medical staff on October 13, 2009.  Compare (D.E. 55, Ex. A at 20) with (D.E. 2, Ex. K at 2).  The hand-written notation on the form is "PSC," followed by the date, "10/13/09," and then the signature "C Carter."  Id. The fact that plaintiff addressed an I-60 complaint to Nurse Webb, however, does not demonstrate that she provided medical attention to plaintiff, or made any decision concerning his health care.  At most, Exhibit K demonstrates only that plaintiff addressed his I-60 to Nurse Webb, most likely because, as evidenced in his brief, he believed her to be the "psych doctor" and in charge of his medications.

18

(D.E. 2 at 1, 5).  However, Nurse Webb is neither a doctor nor in charge of prisoner medications.  (D.E. 55, Ex. B).

Plaintiff's Exhibit L is an I-60 dated October 12, 2009, and is directed to "Medical/Psych  L. Webb."[3]  (D.E. 2, Ex. L).  In this I-60, he requests copies of his medical records "from the Harris County Sheriff's Medical Department."  Id.  The I-60 is stamped as received by staff on October 13, 2009.  Id.  As to the disposition, C. Carter responds to plaintiff: "Need to specify your information on the attached form."  Id.  Thus again, this I-60 complaint does not establish any involvement by Nurse Webb in plaintiff's medical care.

The mere fact that plaintiff addressed I-60s to defendant does not establish that Nurse Webb was personally involved for purposes of § 1983 liability.  See Tyson v. Watts, No. A-06-CA-741, 2007 WL 509240 (W.D. Tex. Feb. 12, 2007) (unpublished) (defendants' signatures denying inmate's grievances did not establish personal involvement in light of evidence that defendants' assistants addressed and signed grievances).  Indeed, the evidence shows that, during his six-day stay at the Garza West Unit, he was seen by Nurse Herschap, evaluated by Sheri Noble and Robin Gandy concerning his mental health state, prescribed

---

[3] Plaintiff is correct that Nurse Webb did not include a copy of this I-60 in her summary judgment evidence.  However, it is clear that plaintiff had a copy, and therefore, there is no suggestion that evidence was withheld from him.

19

medications by Dr. Leinnger, and his grievances responded to by C. Carter.  The

uncontested evidence establishes that Nurse Webb did not meet with plaintiff,

review his records, or make any decisions concerning his medical treatment, (D.E.

55, Ex. B), and plaintiff offers no evidence to refute this finding or to create a

genuine issue of a material fact.

To the extent plaintiff seeks to hold Nurse Webb liable on his understanding

that she was in charge of the intake section for the Medical/Psych departments at

the Garza West Unit, he fails to state a claim because this allegation seeks to hold

Nurse Webb liable pursuant to a theory of *respondeat superior*, which is not

available in § 1983 actions.  Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002)

(noting that § 1983 does not create supervisory or *respondeat superior* liability).

Only the direct acts or omissions of government officials, not the acts of

subordinates, will give rise to individual liability under § 1983.  Id. at 742 n.6

(citing Alton v. Tex. A&M Univ., 168 F.3d 196, 200 (5th Cir. 1999)).  Supervisory

officials may be held liable only if they (1) affirmatively participate in acts that

cause the constitutional deprivation or (2) implement unconstitutional policies that

causally result in plaintiff's injury.  Oliver, 276 F.3d at 742; Thompkins v. Belt,

828 F.2d 298, 303-04 (5th Cir. 1997).  There is no evidence that Nurse Webb

personally participated in plaintiff's medical care, and plaintiff does not allege, let

20

alone offer evidence to suggest, that Nurse Webb implemented unconstitutional policies or procedures.  Thus, plaintiff fails to state a constitutional violation against Nurse Webb.

**B.      Step 2 – Objective Reasonableness.**

Because plaintiff has failed to state a constitutional violation as to Nurse Webb, the Court need not examine whether defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).  Thus, it is respectfully recommended that the Court find that Nurse Webb is entitled to qualified immunity.

## VI.  RECOMMENDATION

There is no genuine issue of a material fact.  Nurse Webb was not personally involved in plaintiff's medical treatment and is entitled to qualified immunity. Therefore, it is respectfully recommended that Nurse Webb's motion for summary judgment, (D.E. 55), be granted in her favor, and that plaintiff's deliberate indifference claims against her be dismissed with prejudice.

Respectfully submitted this 26th day of July 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).